## Friedman et al. v. Exley et al.

588

*F. F. Truscott* and *G. C. Farrier*, for Zoning Board of Adjustment, exceptant.

*B. Levintow*, contra.

*C. L. Cushmore, Jr.*, for Attilio Esposito.

*Opinion sur exceptions*

PER CURIAM, March 29, 1946.—No exceptions were filed by the applicant and those filed on behalf of the Zoning Board appear to be based on a misconception both of the law and the meaning of the Adjudication.

The Bureau of Engineering, Surveys and Zoning denied the applicant a permit to build a warehouse in a Commercial A district and also refused to allow him to cover his entire lot with the building. The Zoning

Board reversing the Bureau held, flatly in the face of the provisions of the ordinance, that warehouses were permitted in Commercial A districts and also granted a variance to dispense with rear yard and open area restrictions. The trial Judge after a hearing reversed the action of the Zoning Board and reinstated the Bureau's order.

The first and sixth exceptions are sufficiently answered by the statement that the specific uses permitted in "A Commercial Districts" are enumerated in Section 16 of the ordinance and warehouses are not included.

It remains to consider whether it was within the Zoning Board's discretionary power to grant the variance.

The powers of the Board of Adjustment conferred by the Act of May 6, 1929, P. L. 1551, sec. 8 (3) are "To authorize, upon appeal, in specific cases, such variance from the terms of the ordinance as will not be contrary to the public interest, where, owing to special conditions, a literal enforcement of the provisions of the ordinance will result in unnecessary hardship, and so that the spirit of the ordinance shall be observed and substantial justice done". Now, relevant provisions of the Zoning Ordinance provide that not more than 75% of the lot area on intermediate lots shall be occupied by buildings, and that the open area shall not be less than 25% of the lot area on intermediate lots and shall consist of at least the required minimum rear yard in all cases, plus such other open courts and/or side yards as shall be required to equal an area not less than the total open area above required.

It is obvious therefore that the framers of the ordinance considered that a certain open area was essential for the purpose of promoting the health, safety and general welfare of the community and any variance therefrom must be limited to cases of practical neces-

sity where a refusal to grant it would result in a peculiar hardship to the land owner.

Of course there may be particular circumstances of hardship or of necessity that if established, would allow the Zoning Board to grant a permit for non-conforming uses and it was quite unnecessary for counsel to make such a display of learning on a point that is not controverted. It is equally true however that the Board's powers are limited. It cannot change the designation of districts contrary to the terms of the ordinance, and non-conforming uses may be permitted only where the refusal to do so would result in peculiar hardship on the land owner without appreciable injury to the neighborhood. Such variations are confined to cases of particular necessity and for reasons that are substantial, serious and compelling: Huebner et ux. v. Philadelphia Saving Fund Society et al., 127 Pa. Superior Ct. 28; Valicenti's Appeal, 298 Pa. 276.

The record will be searched in vain for any evidence to support the Zoning Board's conclusion that an unnecessary hardship exists. On the contrary, the explicit finding is that "Owing to the peculiar conditions surrounding these premises, an unnecessary hardship would be imposed upon the owner if the strict requirements of the ordinance as to rear yardage and open area are enforced. The peculiar circumstances are said to be (1) that the Board thinks the vicinity is deteriorating and this zone should have a less restricted classification; (2) that it is an unnecessary hardship upon this applicant to have to comply with the ordinance because some other land owners have not complied with it.

Such reasons carry their own refutation.

This district, classified as "A Commercial" contains and apparently did contain when the Zoning Ordinance was passed a number of buildings that did not conform to the new requirements. In specific terms, they were exempted as non-conforming uses and they

cannot be made the basis for a variance here. That basis must be found in the property in question and it is not there. The owner can without the slightest difficulty indulge in any permitted use without impinging on the open area required by the ordinance.

Whether changes in the neighborhood render a less restricted classification judicious is a matter for the City Council and does not concern us, as neither Court nor Zoning Board has the power to classify or reclassify a zone. The whole purpose of the ordinance in this regard is rendered abortive if provisions obviously inserted to promote the health, safety and welfare of the community can be set aside by the mere statement that an unnecessary hardship exists.

It does not follow, as asserted by counsel, that if the Board cannot grant from five to six thousand variances every year on the grounds here given, the whole system of Zoning in Philadelphia will be imperilled as it will be necessary to refuse all applications.

We think the Zoning Board must deal with each case on its own facts and agree with the trial Judge that it exceeded its powers in granting a variance in this one.

The exceptions to the Adjudication are dismissed.